Wallace, J.
The demurrer to the bill of complaint must be sustained.
Although one aspect of the bill is designed to present a cause of action for a fraudulent transfer, the facts do not warrant the legal conclusions averred. The transaction disclosed is hot fraudulent as to creditors generally, but one by which certain creditors were induced to part with their property by deceit, and for which they can maintain their several actions. If the assignee can recover at all it must be upon the theory that the defendant received a preference as a creditor of the bankrupt. The action cannot be sustained upon this theory, because the preference was received more tha.n two months before the petition was filed against the debtor upon which he was adjudicated a bankrupt. The averments in the bill to the effect that the debtor fraudulently concealed the fact that a preferential transfer had been made to the defendant do not help the complainant. Assuming that the bill shows that the debtor fraudulently concealed the transactions from his creditors, and that the creditors filed their petition in bankruptcy against the debtor as soon as the fraud was discovered, nevertheless the admission that the transfer was actually made more than two months before the filing of the petition is fatal to the assignee’s right to recover.
The right of an assignee in bankruptcy to recover property *170 or its value, which has been transferred by the bankrupt in fraud of the provisions of the bankrupt act, is purely a statutory one. By section 5128 of the Revised Statutes of the United States, as amended in 1874, in its application to involuntary bankruptcy, it is provided that the transfer shall be void, and the assignee may recover the property or its proceeds, when the person who has been declared a bankrupt being insolvent, or in contemplation of insolvency, within two months before the filing of the petition against him, with a view to give a preference to any creditor, makes any transfer of any part of his property to a person who received the transfer having reasonable cause to believe such debtor to be insolvent, etc. It is as indispensable to the right of the assignee to recover that the transfer be one made within the two months, as that it be one made by a person who was insolvent or in contemplation of insolvency. He has no ■cause of action unless he brings himself within the conditions precedent to its existence.
It is not within the province of a court of law or equity to enlarge or change a statutory cause of action; the court can only interpret and enforce; and I should deem the question presented so plain as not to require farther comment, were it not that Judge Dillon, in the Exchange National Bank of Columbus v. Harris, 14 N. B. R. 510, has decided the same question adversely to the views which I entertain. In that case the learned judge justly remarks that it shocks the moral sense to permit a fraudulent purchaser purposely to conceal his fraud from the world, and then insist that it is too late to pursue him; and he is of opinion that the cases in which courts of equity have refused to apply the bar of the statute of limitations, when the fraud has been perpetrated and concealed by the party who seeks to avail himself of the lapse of time, are analogous and controlling, and his conclusion is that a creditor who has received a preference, and concealed it, cannot insist that it was not received within the statutory time.
The reasons thus given and the conclusion reached would be more satisfactory if the act of a creditor in obtaining a *171 preference over other creditors were a fraudulent act. Such an act is not fraudulent. Neither is there any legal fraud in concealing the fact that a preference has been obtained. Except for the intervention of the bankrupt act, the legal and the moral right of a creditor to obtain payment of his just debt and keep silent about it, although the debtor be insolvent, is unquestionable. The bankrupt act declares preferences and purchases to be invalid if consummated under certain specified conditions, and when thus consummated they are a fraud upon the act and a wrong in legal contemplation. Unless consummated within these conditions the bankrupt act does not attempt to deal with them. No better presentation of this view of the subject can be found than was made by the same learned judge in Bean v. Brookmore, 4 N. B. R. 196; S. C. 1 Dillon Rep. 24. After stating that there is nothing essentially immoral or dishonest in the preferring of one creditor over another, and that it was not forbidden by any law in this country previous to the bankrupt act, but that it was designed by that act to frame a system of law one feature of which should secure an equal distribution of an insolvent’s property among his creditors and yet protect creditors whose liens ought to be respected, he says: “In this dilemma, congress said we cannot prescribe any rule by which a preference would be held to be morally right or wrong, and it would be fatal to the administration of the law of distribution to permit such a question to be raised. We will, therefore, adopt a conventional rule to determine the validity of these preferences. In all cases where an insolvent pays or secures a creditor to the exclusion of others, and that creditor is aware that it is so when he received it, he shall run the risk of the debtor’s continuance in business for four months. If the law which requires equal distribution is not called into action for four months, the transaction, being otherwise honest, shall stand; but if that law is invoked within four months the transaction shall not stand, but the money or property received by the party shall become a part oí the common fund for distribution.”
The same considerations apply to that section of the bank *172 nipt act which declares sales and transfers invalid made to defeat the operation of the act within a specified period before bankruptcy proceedings are commenced.
If this is a correct exposition of the spirit and effect of those sections of the act under which the assignee’s cause of action arises, the question when a case is presented is simply whether the transaction in controversy is one which contravenes the conventional rules thus adopted. One of these rules is that the preference shall be one which was received within a designated time before proceedings in bankruptcy were commenced. To hold that if the preference is concealed the time when it was obtained dates from the discovery of the preference, would, in effect, abrogate one of these conventional rules and substitute a different rule.
There is no analogy between a case arising under the sections of the bankrupt act referred to, and those where parties have been denied the right to invoke the statute of limitations as a defence in actions of fraud, until the discovery of the fraud. Statutes of limitations, like the statute of frauds, are defensive statutes. Instead of creating a cause of action, as is done by the bankrupt act, they operate upon existing causes of action, and impose restrictions upon their enforcement intended to prevent fraud.
It is the settled doctrine in equity, and now frequently recognized at law, that such statutes cannot be invoked by a party who has concealed his fraud for the purpose of making his fraud successful. Early in the history of this doctrine courts of equity planted it, upon the ground that the concealment of the fraud gave rise to an equity binding upon the conscience of the party of which equity would take cognizance. The better ground, however, seems to be that rule of interpretation of statutes which requires them to be so construed as to best secure the end in view; and this is the only ground open to a court of law. Speaking of the statutes of limitations, Judge Story says, in Sherwood v. Sutton, 5 Mason, 143: “It ought not, then, to be so construed as to become an instrument to encourage fraud, if it admits of any *173 other reasonable interpretation; and cases of fraud, therefore, form an implied exception, to be acted upon by courts of law and equity according to the nature of their respective jurisdictions.' Such, it seems to mo, is the reason upon which the exception is built.”
This principle of interpretation has no application to a statute which is designed to formulate a system of artificial rules to effect a satisfactory distribution of the estates of insolvent debtors. It cannot apply unless Congress intended by the bankrupt act to treat a creditor, who has obtained a preference and concealed the fact, as one who has committed and concealed a fraud, and that Congress did not so intend is very clearly shown by Judge Dillon in Bean v. Brookmire.
The bill in this case does not show that the creditor took any affirmative action to conceal the fact that he had obtained a preference, and in this respect the case is not so favorable to the complainant as that presented in the Exchange National Bank of Columbus v. Harris. Upon the rule, however, which obtains when a party seeks to defend his fraud by the statute of limitations, it is held that it need not appear that the concealment was effected by any affirmative action of the defendant, and I have considered the case as though the bill alleged a concealment by the defendant. The consideration, however, that the application of this rule would place a creditor who has received a preference and merely kept silent about it in the position of a party who has committed and concealed a fraud, furnishes another argument against any such interpretation of the bankrupt act as is contended for.
The demurrer is sustained.